David B. Rosenbaum, 009819
Brandon A. Hale, 027388
OSBORN MALEDON, P.A.
2929 N. Central Avenue, Suite 2100
Phoenix, Arizona  85012-2793
(602) 640-9000
drosenbaum@omlaw.com
bhale@omlaw.com

John O. Farley (*pro hac vice* to be submitted)
Joseph A. Schwartz (*pro hac vice* to be submitted)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY  10018
(212) 813-8800
jfarley@goodwinprocter.com
jschwartz@goodwinprocter.com

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Abode Healthcare, Inc., <br><br>                 Petitioner, <br><br>          v. <br><br> Jeff L. Smith, an Arizona resident; SP Management, Inc., a Nevada Corporation, <br><br>                 Respondent. | No. <br><br> **COMPLAINT FOR ORDER TO COMPEL ARBITRATION** |

  Petitioner Abode Healthcare, Inc. ("Abode" or "Petitioner") hereby petitions the Court to compel Jeff L. Smith and SP Management, Inc. (collectively, "Sellers" or "Respondents") to arbitrate a working capital dispute under the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA")in accordance with the terms of the parties' written contractual agreement.  In support thereof, Abode submits the following.

# INTRODUCTION

1. On December 31, 2012, Abode purchased Premier Hospice & Palliative Care, an Arizona limited liability company ("Premier"), Premier Hospice & Palliative Care - Indiana LLC ("Premier Indiana") and PH Care of California, Inc. ("Premier California") (collectively, "the Companies") from, pursuant to a Purchase and Sale Agreement (the "Purchase Agreement"), attached hereto as **Exhibit A**.

2. Abode and Sellers jointly negotiated the Purchase Agreement and all are signatories to the executed agreement.

3. The Purchase Agreement exclusively establishes the procedures for determining any adjustments to the purchase price after the closing of the transaction based on the difference between the Estimated Working Capital and Final Working Capital. Ex. A at ¶¶ 2.2(g)-(h).

4. The Purchase Agreement contains a valid Alternative Dispute Resolution mechanism providing for the resolution of disputes concerning the Final Working Capital amount by an independent accounting firm, specifically identified in the Purchase Agreement as the Los Angeles, California office of BDO USA, LLP (hereinafter, "BDO" or the "Referee"). *Id.* at § 2.2(h)

5. Abode attempted in good faith to resolve disputed items with respect to Final Working Capital.

6. When it became clear that the parties would not be able to agree on the Final Working Capital, Abode informed Sellers of its desire submit the dispute to BDO for resolution as required by the Purchase Agreement.

7. Sellers have deliberately ignored their contractual duty to arbitrate this issue and refused to sign the engagement letter necessary to go before the Referee.

8. There is no legal basis for Sellers to refuse to arbitrate this working capital dispute. Seller Jeff L. Smith has acknowledged that this dispute is subject to arbitration in sworn testimony in a related lawsuit filed by Abode against Sellers.

9. Sellers hope to force the parties to disregard the working capital arbitration

provision in the PSA and strip Abode of its right to use that provision to quickly and efficiently resolve working capital disputes, instead forcing Abode to resolve working capital as part of a *separate* arbitration before the American Arbitration Association, restricted solely to indemnification issues (*not* working capital issues) because that arbitration will be resolved long after the working capital issues would be resolved, thus delaying the inevitable payment of some $2 million by Sellers for as long as possible.

10. In this respect, Sellers have emphasized in related litigation that Abode is in a difficult cash position. Sellers hope that this needless delay will undermine Abode's ability to fund its litigation against Sellers, who have a war chest in excess of $14 million which can be used to "run out the clock" on the underlying litigation.

11. There is no legal basis for this delay.

12. Abode respectfully petitions the Court for an Order, pursuant to Section 4 of the FAA, 9 U.S.C. §4, to compel Sellers to comply with their contractual obligations and submit the Working Capital dispute to the Referee for arbitration.

**THE PARTIES**

13. Petitioner Abode is a Delaware corporation, headquartered in Durango, Colorado. Abode operates programs in California, Arizona, Idaho, Colorado, Indiana, Alabama, and Virginia.

14. Respondent Smith is a resident of Maricopa County, Arizona. He was the Chief Executive Officer of the Companies.

15. Respondent SP Management is a Nevada corporation. Smith is the Principal and President of SP Management, which owned the Companies prior to the December 31, 2012 Transaction.

**JURISDICTION AND VENUE**

16. The jurisdiction of this Court is invoked under 9 U.S.C. §§1, 2, and 4 and 28 U.S.C. §1332. There is diversity of citizenship between Petitioner and Respondents and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 as set forth below.

17. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391. The FAA permits a party aggrieved by the "failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" to petition a United States District Court "which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Parties' consented to "jurisdiction of any applicable . . . federal court of general jurisdiction located in the State of Arizona" in the Purchase Agreement. In addition, the events giving rise to Abode's claim and this Petition occurred largely in Arizona.

## BACKGROUND FACTS

18. Abode provides home health and hospice treatment to patients and their families in seven states, including Arizona.

19. Abode and Sellers, independently and through counsel, negotiated the terms of the acquisition and both reviewed the Purchase Agreement prior to its execution.

20. At 11:59 PM on December 31, 2012, Abode obtained ownership of 100% of the stock of Companies from Sellers pursuant to the Purchase Agreement.

21. The Purchase Agreement contains two Alternative Dispute Resolution provisions. One provision specifically provides for an accounting arbitration to determine the adjustment to the purchase price to be made because of any surplus or deficiency found in the Companies' Closing Working Capital as compared to a Target Working Capital of $1,100,000. *See*. Ex. A at §§ 2.2(e), (g)-(i). The other calls for the submission of other, non-Working Capital controversies or disputes arising from the Purchase Agreement between the parties to the American Arbitration Association (the "AAA"). *See*. Ex. A at §11.4.

22. After completing the purchase of the Companies, Abode, now having access to the books and records underlying the Companies' financial statements, discovered significant deficiencies in the Companies' Closing Working Capital.

23. In total, Abode determined that the Companies' Closing Working Capital as of the Closing Date was deficient by $850,488.33, resulting in aggregate required

adjustments of $1,999,831.62 to the purchase price to reflect this deficiency.

24. Following the procedures outlined in the Purchase Agreement, Abode delivered a proposed Final Balance Sheet and proposed Closing Working Capital to Sellers on March 29, 2013. *See* Ex. A at § 2.2(g).

25. On April 25, 2013, Sellers delivered an Objection Notice to Abode's proposed Final Balance Sheet and proposed Closing Working Capital, as required by the Purchase Agreement. *See* Ex. A at § 2.2(h).

26. The Purchase Agreement specifically identifies the steps to be taken to resolve disputes relating to Working Capital at § 2.2(h), which provides, in relevant part, that if the parties have failed to resolve all objections to the Final Balance Sheet within a sixty (60) day period from the delivery of the Objection Notice, then:

> the remaining objections in dispute shall be submitted for resolution to an accounting firm having significant experience in the hospice care industry to be selected jointly by Buyer and Seller within . . . five (5) days of the delivery or, if Buyer and Seller are unable to mutually agree within such period, <u>such accounting firm shall be the Los Angeles, California office of BDO (. . . the "Referee"). The Referee shall determine, in accordance with this Agreement and the Working Capital Principles, any unresolved items of Final Working Capital</u> within thirty (30) days after the objections that remain in dispute are submitted to it. If any remaining objections are submitted to the Referee for resolution . . . the determination by the Referee of the Final Working Capital, as set forth in a written notice delivered to Buyer and Seller by the Referee, shall be made in accordance with this Agreement and shall be binding and conclusive on the parties, including, but not limited to, Seller and shall constitute an arbitral award that is final, binding and unappealable and upon which a judgment may be entered by a court having jurisdiction thereof; and (D) Buyer and Seller shall each pay their own costs and expenses incurred in connection with the dispute of the determination of the Final Working Capital; provided, that the fees and expenses of the Referee shall be borne in the same proportion that Seller's position, on the one hand, and Buyer's position, on the other hand, initially presented to the Referee (based on the aggregate of all differences taken as a whole) bear to the determination by the Referee of the Final Working Capital.

Ex. A., Purchase Agreement § 2.2(h) (emphasis added).

27. As contemplated in the Purchase Agreement, Abode attempted in good faith

to resolve the dispute concerning Working Capital with Sellers during a mandatory 60-day period to address the objections, to no avail.  *See* Ex. A at § 2.2(h).

28. Following the close of the mandatory 60-day period, Abode informed Sellers in a letter dated June 27, 2013 of its intent to submit the dispute to the Referee for resolution as provided in the Agreement.  *See* Ex. A at § 2.2(h).

29. Abode then sent a letter to BDO, with copy to counsel for Sellers, on July 22, 2013 requesting litigation and dispute resolution services for the Final Working Capital dispute.

30. Sellers disregarded this notice for more than two months.

31. On October 4, 2013, Abode sent another letter to Sellers reiterating its express intent to follow the procedures for determining Final Working Capital as outlined in the Purchase Agreement (the "October 4 Letter"), and attaching an engagement letter for the Referee, dated September 9, 2013, and executed by Abode (the "Engagement Letter").

32. The October 4th Letter specifically stated that, pursuant to Section 2.2(h) of the Purchase Agreement and the contribution arrangements set forth in the Engagement Letter, Abode was prepared to pay $10,000 of the total retainer cost of $20,000 to BDO.

33. Sellers once again failed to respond.

34. The contractually mandated accounting arbitration cannot move forward unless Sellers execute the Engagement Letter and pay their half of the Referee's retainer.

35. Counsel for Abode again contacted Sellers on November 13, 2013 and spoke again with Sellers' counsel on November 21 in a last attempt to resolve the issues supposedly keeping Mr. Smith from arbitrating Final Working Capital.

36. Abode served Sellers on November 22, 2013 with notice of its intent to initiate an action under Section 4 of the Federal Arbitration Act compelling Seller to submit to the arbitration procedures detailed in Section 2.2(h) of the governing Purchase Agreement if it did not receive a copy of the signed Engagement Letter and confirmation of payment to the Referee by November 29, 2013.

37. Again, Sellers simply ignored Abode's November 22, 2013 letter and Abode

was forced to file the instant Complaint to compel arbitration.

## PETITIONERS ENTITLEMENT TO RELIEF

38. Federal law strongly favors arbitration. *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that "[s]ection 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.")

39. The FAA requires a court to compel arbitration if it is satisfied that the claim at issue is within the scope of a valid, enforceable agreement to arbitrate. *See* 9 U.S.C. §§ 2, 4.

40. Section 2 of the FAA, 9 U.S.C. § 2, provides in relevant part as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

41. With Section 2, Congress has "commanded that an arbitration agreement is enforceable just as any other contract." *Vaden v. Discover Bank, et al*, 556 U.S. 49, 64 (2009). By agreeing to submit the dispute to a third party, the parties have agreed to arbitrate under the FAA. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1208 (9th Cir. 1988).

42. Therefore, absent unmistakably clear language to the contrary, arbitration should be ordered unless it can be said that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960).

43. Section 4 of the FAA, 9 U.S.C. § 4, provides Abode a cause of action to compel Sellers to resolve their dispute through arbitration. Section 4 of the FAA, 9 U.S.C. § 4, provides in relevant part as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

44. The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under the FAA, a court should determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

45. The Purchase Agreement is a contract evidencing a transaction involving commerce within the meaning of the FAA and contains a specific written arbitration provision for the resolution of the Working Capital dispute by BDO. *See* 9 U.S.C. §§ 1, 2.

46. Abode is aggrieved by Sellers' refusal to arbitrate under the Purchase Agreement and, save for the arbitration agreement, the Court has jurisdiction under Title 28 of the U. S. Code, Section 1332.

47. Sellers have disregarded their contractual obligations to abide by the arbitration provision for the determination of Final Working Capital in the Purchase Agreement.

WHEREFORE, Petitioner requests an Order directing Respondents (a) to proceed to arbitration in accordance with the terms of the Purchase Agreement including prompt payment of their share of BDO's fees; (b) to pay the costs and attorneys' fees incurred by Petitioner in compelling arbitration; and (c) to prove such other and further relief as the Court may deem just and proper.

Respectfully submitted this 9th day of December, 2013.

                OSBORN MALEDON, P.A.

                By: s/ Brandon A. Hale

                    David B. Rosenbaum
                    Brandon A. Hale
                    2929 N. Central Avenue, Suite 2100
                    Phoenix, Arizona  85012-2793

                    John O. Farley (*pro hac vice* to be submitted)
                    Joseph A. Schwartz (*pro hac vice* to be submitted)
                    GOODWIN PROCTER LLP
                    620 Eighth Avenue
                    New York, NY  10018

Attorneys for Abode Healthcare, Inc.